May it please the Court, good morning, Scott Edwards appearing on behalf of the appellant Osvaldo Contreras. Mr. Contreras went to trial in December of last year in Reno, Nevada District Court upon a charge of illegal reentry, a violation of 8 U.S.C. 1326. He was convicted and sentenced to 142 months incarceration as a result of that conviction. During trial he objected to the admission of an exhibit proposed by the government, the back page of the warrant of deportation, otherwise known as the I-205. The second page of that document bore the signatures of two officers from the Immigration and Naturalization Service who verified that Mr. Contreras had actually been deported from the United States, that is, actually set foot in Mexican soil. Neither one of those officers whose signature appear on the document testified at trial. In fact, we don't even know who they are and their signatures, although are on the document, we can't verify their names or find out who they were. Mr. Contreras wanted to cross-examine those officers regarding proof of deportation, which is an essential element of the crime of illegal reentry. I know the point you're getting to, but on this point, isn't your argument just squarely foreclosed by Ninth Circuit law? Squarely foreclosed, yes. Well, let's put it this way. I'm here to submit to you that those two decisions relied upon by the district court, the Contreras case, no relation to this Contreras, and more earlier than that, the Hernandez-Rojas case from 1980, went beyond what the federal rule of evidence provides in a literal sense. Well, perhaps, but we're bound by that. We're bound by that as a panel. So where does that leave you? How do you distinguish those cases in this factual context? Well, in both of those cases, you had testimony from officers who, although not the individuals who signed on the I-205 execution warrant, provided testimony about the reliability of the process that generated the document, meaning these are the normal procedures that take place when the warrant of deportation is executed. And we didn't have anything like that in this case. We had a document that was admitted under the public records exception, and the district court relied on Contreras and said it's a public record. We were not able to show any kind of untrustworthiness about it because we don't even know who the individuals who executed it were. Now, both the Contreras cases said that the Contreras and Hernandez. Isn't that the whole idea of, you know, admitting a public document that, you know, the proponent doesn't have to go through all that rigmarole because it's trustworthy? Right. If this was a trustworthy document, if there was inherent reliability to it, if it wasn't merely a ministerial, if it's merely a ministerial observation of a law enforcement officer, then it should be admissible under the public records exception. However, this case precedent that we have in Contreras and Hernandez-Rojas goes beyond what the rule provides. The rule, Federal Rule of Evidence 8038, says that there's an exception for observations of law enforcement officers. Now, the INS individuals who signed this were law enforcement officers, and they recorded their observations, and it went to a material element of the offense in this criminal case. And the rule itself, the literal reading of it, doesn't make any exceptions for, quote, reliable observations or ministerial observations of a law enforcement officer. It merely says those things are not admissible. So those two cases essentially expanded the evidentiary rule and scaled back this right of confrontation under the Constitution. Well, how do you, accepting what you say, if I read the record correctly, your client admitted that he had been removed from the United States. So isn't any error harmless in this case? Well, I don't know how your reading of the record indicates that, Your Honor. I'm looking at the testimony of Agent Grubel. Agent Grubel executed the document in the Nevada State Prison, an interview in I-215 of Mr. Contreras under the pretext that he was there to process him for deportation. In that interview, allegedly, Mr. Contreras told him that he had been deported previously. Right. But we, on cross-examination, were able to reveal that Agent Grubel had mistakenly written down information on that I-215 form. Agent Grubel, for example, said that Mr. Contreras had reentered the United States in March of 2002, which was a temporal impossibility. He admitted his mistake about that. Right. I understand. And you attacked his credibility. But if the jury accepted what the agent said is true, then there's an admission against interest, which at least they could base a conviction on regardless of the admission of the warrant of deportation. At the time that the objection to the warrant of deportation was made to the district court, the court inquired of the prosecution how critical was this document of them. And the prosecutor, the same prosecutor you'll have here, admitted that his case depended entirely upon this document. So I don't think you can find it is completely harmless on the basis of other evidence. Either it's admissible and the precedent that we have in the circuit under Hernandez, Rojas, and Contreras will continue to live on, or it's not admissible and it was prejudicial error under the Confrontation Clause. What about your second point? Second point, we don't have any case law on this issue. And again, it's a complementary issue. It relates to the competency of the witness who testified about the absence of INS records on an essential element, meaning whether or not Mr. Contreras had applied for that CFR cited. Did the district judge explain his ruling on admitting that testimony? No, he did not. He just overruled the objection? He just overruled the objection after the witness was taken on voir dire and asked about his certification to testify about the nonexistence of these records. And he admitted, he acknowledged he did not have that certification. Nevertheless, the objection was overruled, and we don't have any reasoning for it. There's no case law that I've been able to discern that we have. Even assuming we would agree with your interpretation of whatever law there is, we have the same question Judge Thomas put on your first argument, which is, since I believe the defendant, you know, admitted an illegal reentry, isn't that error harmless if it were, if it was error? This issue relates to the application for permission to ---- Lack of permission. Right. So it relates to ---- And he admitted an illegal reentry, as I said, didn't he? He, according to the testimony of the INS officer, allegedly made a verbal admission that was memorialized in this statement riddled with mistakes. But I don't believe on that same document you're going to find an admission of his that he did not reapply for reentry. How that was proved was the INS officer said, I've reviewed the case, and I didn't see any paperwork in there about permission to reenter. So again, that relates to an element of the offense, and the testimony that we have on it is not in compliance with this regulation. I don't know how you will resolve this. May I ask you a question? Yes, Your Honor. Did he bring the file, the agent bring the file with him to court? Yes.  Did he bring the file? He did have the file and access to the file. I don't know if it stayed with him the whole time. Okay, what I'm getting at is I don't understand the argument that once the documents are shown to him, he can't look through it and say what he sees. Was there an objection to him looking at the file? No. So, okay, so the documents are without objection shown to the witness. Is it your contention that he can't say I'm now looking at Exhibit 1, and this is what I see, this is what I don't see? No, our objection was under the CFR, you have to have authority to certify the non-exhibit record. Right, and he didn't do any certification. Okay, so we can't really say that he certified something because he didn't certify anything. What he's doing is he's testifying from the witness stand, looking at an exhibit, and describing what he sees. I'm missing the problem there. Yeah, presumably, I guess, that logic is that everything that relates to this person is in that file. But he went beyond saying this is, the file contains A, B, and C, but didn't he offer an opinion that to him it appeared to be, you know, complete and to be regularly kept in good order, something to that nature? Like a business record. Right. Yeah, and this guy apparently has some familiarity with these A files, so. Right. So I guess I still have a problem with what, especially since there's no objection to the file, what's the problem of this guy who's got a familiarity with the file, explaining it, talking about it, and saying what he observes about it? I guess. He just convinced me he's not authorized to make a certification. Right. But he didn't make a certification. He didn't. No, he didn't. No. That's, that's our issue. He doesn't have the authority to certify that. Okay. And I said. You're over your time, but, but we'll give you a minute for rebuttal, all right? Thank you. All right. Chair from the government. Thank you, Your Honor. Again, Ron Reschew on behalf of the government. Looking at the first issue, I believe Fernando wrote, or Hernandez Rojas and Contreras pretty much lock this panel in that it's a business record, regardless of what you might think, because you're bound by circuit precedent. It is a record kept in the official course of business, as the courts have explained below. It's not a police report. It's a means of keeping track of an alien and the fact that he was deported. The fact that it later becomes evidence is only because the defendant re-offended. Otherwise, it would have never been evidence. It was not a report of criminal activity or an investigation when that warrant is completed. The reality of the situation, when you figure the vast amounts of people that are deported by deportation officers or law enforcement officers over our southern border, all the officer would have been able to say anyway, more than likely, is my job is to do this. I check a picture. I check a fingerprint. When I see him start out across the bridge, then I sign the form. He would more than likely have no individual memory of this particular defendant. And the question about whether or not he was deported was pretty much answered by the fact that when he was interviewed in jail, he said he came back through San Ysidro. Well, he was being deported in Texas, so obviously he had left the country. So we believe that under controlling Ninth Circuit law, that document was properly admitted. The second issue, once again, goes to the competency of the witness to certify the nonexistence of a record. As Judge Silverman pointed out, he didn't certify anything. What he testified to is he was there. He had with him the official A file that is maintained by the Immigration and Naturalization Service for this defendant. He had the opportunity to go through it. He couldn't find any document giving the defendant authority to return to the United States. But didn't he go beyond saying he couldn't find anything in there? He said the file was regularly kept. And what's his competency to testify to that? He's not the custodian. It's not part of his job to maintain the A file, is it? He is testifying from his own experience. Is he the actual custodian? That's an interesting question on A files, because who is the official custodian? Would it be the attorney general? Would it be the director of immigration or someone else? The A files are actually stored in different areas throughout the country. And then they're brought in by A number and kind of come in an overnight mail or whatnot. So that, I think, to me, emphasizes more that it's not the immigration agent on the spot that's the custodian. You know, he had no basis or reason or knowledge to know what's in the file. He has hardly anything to do with it. He can testify from his years of experience of working with A files and looking through it, what's there and what's not there. He was subject to cross-examination. He could... What gives him any more competence than you or me to say what's in a file? The file is there. He says, well, I looked through it, and there's no authority. But that really, in the sense of things, he had no more knowledge than a juror or a judge or any of us here in the room. Did he? That may well be, Your Honor, but the same would be true if you think about the person who certifies the nonexistence of a record that they went through and said there's nothing in there. They're certifying a negative. Right. But the problem you have is that there is a specific regulation on the point that provides authority. What is the point of that regulation, if not to confer authority on someone to actually testify and certify the records? I think the point of that regulation, and when you read the regulation, most of it's for administrative purposes, when individuals are trying to get official records, mainly for civil litigation, that they get something certified by a person from headquarters. That's fine. Had we offered a blue certificate with the ribbons and the seals and the wax on it, obviously the agent couldn't have testified to that. But the elements we had approved is that he returned without authority, and we had the agent who could testify from his experience what's required to be maintained in these files, and that he looked through it and wasn't there. I believe the agent also testified that he had access to the computer indices, the same type of computers they use at the border where you can punch in a name or an A number and see if you can find any record. Since it is an official record, you don't really need to authenticate it. So the custodian is not necessary. It's an official record. That's exactly why you need to authenticate it. Now, I understand what you're trying to do in the case. I mean, and you may have succeeded in adding evidence, but I don't see how you get around the regulation in terms of saying that this agent is authorized to certify. Had he certified something, which would have been signing a certificate, and I'm reading certification as a technical requirement of the individual who can actually sign as an authorized person, defense would be absolutely correct. He does not have the authority to certify. Now, what's the difference between doing that and, you know, essentially testifying exactly to exactly the same thing on the witness stand? Can he certify by his testimony orally to exactly the same thing? In many ways, that's true, Your Honor. But he's also there to withstand cross-examination, too, unlike somebody in Washington, D.C., who just sends a certification, right? I mean, he's there. The record is there. Theoretically, the file could have been passed among the jurors, and they could have looked through it, couldn't they? I would agree with that, Judge Silverman, since the entire A file was there to the best of our knowledge. I mean, if this guy is some bureaucrat in Washington authorized to make a certification, they'd mail it in, and that would be the end of that. But this guy brought the file with him and is testifying to what he sees with his own eyes right then and there and that anybody can look at and challenge and cross-examine and verify. Isn't that the difference? I think so, Your Honor. In many ways, I suppose you could compare it to a summary witness in a more complex case, since he has access to the entire file. And rather than give it to the jury to go through, he can give a summary of what's there. Sure. Just like you or I could. I mean, that's the problem with basically, it seems to me, the problem. Now, in this case, and I want the defense to address it, it may be that the agent's testimony, coupled with the defendant's purported admission, may be enough to sustain a sufficiency of the evidence, sustain this case against the sufficiency of the evidence objection. But it seems to me that when you're trying to put in a document and the statute talks about who should certify it, just picking somebody out of the agency to break it over is circumventing the normal rules of foundation. We don't know that. All he knows is he got the document. Maybe that's enough. But it seems to me that in most circumstances, you have to have someone with knowledge. Well, I would suggest who would have the better knowledge of what's in that file, the individual who's holding the A file that has the original documents, pictures of the defendant, or the faceless individual in Washington who signs a blue piece of paper and is not subject to cross-examination, who's not in court, who's not with the file. Well, sure, but the point of that is that there are procedures to follow to ensure that it's a complete file, and the person is charged by the regulations to follow the procedures. Now, certainly that's subject to cross-examination, but it seems to me you're just emasculating the certification requirement or the certification regulation by saying that you can pull anybody out of the agency and saying this is the file. I would agree with you if we were trying to certify the record, but we weren't trying to certify. We're offering the original evidence, and what is there? Not a certification, not a custodian, but we're using the rules that apply. So that would be our position on it. Even if there was any error in this case, since the defendant admitted the offense, there's sufficient evidence to uphold the conviction. And finally, just as a point of clarification, he did not get 144 months for this offense. Part of that was supervised release violation from his previous conviction. It was tacked on consecutive to, I believe, he got 118 months on this particular case. Okay, Mr. Rachel. Thank you. Thank you. I know you're reluctant to revisit the issue on Contreras and Hernandez-Rojas, but from the perspective of Mr. Contreras, this trial felt like a trial by affidavit. He was presented with documentation. That was all the evidence that the government presented relative to the material elements of the offense. Even this alleged confession of his was a document that he didn't write. This was composed by this agent, Grugel, who went down to interview him while in prison under the notion that he would process his deportation after that point. So if you're not going to have live witnesses and live testimony in cases like this, then the confrontation clause really doesn't have much effect for an individual like Mr. Contreras. And that is the perspective he had. The paperwork came in against him. That's all there was. Right. But given that we don't have the authority to overrule those precedents as a three-judge panel, I might want to move to your second point. All right. Well, certification, if we wanted this individual certified for the purpose of saying there is no record out there of him applying for permission to return to the United States, yes, maybe it wasn't in the file. Is that the entire file? Is there a record kept of people who apply for admission in the bureaucracy in Washington, D.C.? Nobody testified about that. And that's why we felt it was important that there should be a certification of this individual that the record is complete. Thank you. Okay. Thank you. This case is submitted for decision, then. Next case on the argument calendar is Funes, Funiez, Hernandez v. Demore v. INS. Are they both here now? Okay. Good. Thank you. Thank you.
judges: Tashima, Thomas, Silverman